# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BRANDON DEWS, # 323-929 | * |
| Plaintiff | * |
| v | * Civil Action Case No. RWT-09-3317 |
| J. PHILIP MORGAN, Warden<br>OFFICER COOK<br>OFFICER CROW<br>OFFICER DREW<br>SGT. LIKEN<br>OFFICER CARTWRIGHT<br>OFFICER GOVER | *<br><br>*<br><br>*<br><br>* |
| Defendants | * |

***

## MEMORANDUM OPINION

Pending is Defendants Warden J. Philip Morgan, Sergeant Rodney Liken, Officer Shawn Cook, Officer Jerry Crowe, Officer Mark Drew, Officer Alicia Cartwright, and Officer Russell Gover, Jr.'s, Motion to Dismiss or for Summary Judgment, and the response thereto. The case is ripe for dispositive review; a hearing is deemed unnecessary. *See* Local Rule 105.6 (D. Md. 2010). For reasons that follow, Defendants' motion, construed as a Motion for Summary Judgment, shall be granted.

## BACKGROUND

### I. Plaintiff's Allegations

Dews raises Eighth Amendment excessive force and conditions of confinement claims. He states that his life is in jeopardy, he is afraid to eat the food in prison, and he is subject to constant verbal abuse. Dews asserts that he has suffered second- and third-degree burns from pepper spray and has mental flashbacks from incidents of excessive force. He alleges that he is

taking medication as a result of his injuries. He also claims a religious book was improperly confiscated from him. As redress, he requests damages of $1 million.

   A.  **September 11, 2009**

Dews alleges that on September 11, 2009, Officer Cook informed him that a religious book Dews had in his cell was contraband, swore at him, kicked the book away, and threw it into the trash can. Officer Cook said "So fuckin what Nigga! It's on the tier its considerate contraband. What are you too stupid to read the handbook or buy what you can't read, which one?" Complaint, p. 2. Dews informed Sergeant Liken who suggested that he submit a request for administrative remedy. According to Dews, "Officer Cook continued to harbor ill feelings toward me and harass me every day." *Id*.

   B.  **November 16, 2009**

On November 16, 2009, Dews, who is on a religious diet, complained that he was repeatedly served vegetarian sausage and was losing weight. Officer Drew told Dews that he was "lucky that his kind" was even getting fed. Dews alleges that Officer Cook called him a "porch monkey." Dews claims Officer Drew and Cook went to his cell later that day and threatened him if he refused to leave the cell. Officer Cartwright then appeared, swore at Dews, and threatened to spray him with mace if he refused to exit the cell. Officer Cartwright allegedly said "You are a nigga….you're make it hard on yourself, we're going to mase [sic] you and drag you out. I thought you were a smart nigga-boy, but you're dumb as shit and an asshole, so you deserve to get your ass kicked, you stupid mother fucker." *Id*. Then Officer Cartwright left.

Dews claims that "the Lieutenant" came to his cell and Dews agreed to the hand-cuffs.

Officer Drew, Officer Cook, Officer Gover, Officer Cartwright, and the Lieutenant then

2

placed him in a "hidden cell" in the "SOH."[1] The Lieutenant left and the remaining officers strip searched him. Officer Gover searched Dews' mouth as part of the search and choked him. When Dews tried to grab Officer Gover's hand, Officer Crowe hit Dews "with his first up-side the head" and Officers Cook and Drew sprayed him with pepper spray and kicked his "private areas" while Dews tried to crawl away. Complaint, p. 5. Dews alleges Officer Cartwright emptied her can of mace on his private areas while he was hand-cuffed and placed in three-point restraints.

Dews claims that he received no medical attention after the incident. He asserts that he remained in three-point restraints without access to a toilet and twice urinated on himself. He alleges that he was left this way until November 18, 2009. Dews states that the officers told the psychologist that he had attempted suicide and the pepper spray was used to prevent him from killing himself. *See id*.

### C. November 18, 2009

Dews was released from psychological evaluation at 12:30 p.m. on November 18, 2009 and returned to his cell. Dews claims that on November 18, 2009 at 11:30 p.m., he was escorted by Sergeant Likin, Officer Crowe, Officer Drew, and Officer Gover to a stripped-down cell and placed on staff alert. Dews was pepper sprayed and ordered to remove his clothes. Sergeant Likin stated "Boy, don't you know that we will kill you! And not give a fuck what happens. You keep it up, you'll be hanging from a cell window with your neck broke." Complaint, p. 6. Dews asserts that he complied with orders to remove his shoes and hand them to the officers. Dews claims he was then maced. The officers stomped and kick him in the stomach. Dews was

---

[1] Special Observation Housing.

left in the cell without a mattress, running water, or sheets.

### D. November 19, 2009

Dews claims that after he informed Officers Crowe, Cook and Sergeant Likin that he had not eaten for several days, they ordered him to stand and pepper-sprayed him. Dews was put in three-point restraints and dragged across the prison compound while wearing only his boxer shorts. Dews was placed in a bare cell. Dews alleges the officers refused his request to write a statement and see a nurse. When he refused a shower, they "maced" him with three cans of pepper spray.

## II. Defendants' Response to Plaintiff's Allegations

### A. Religious Book and Meal Claims

Verified exhibits filed by Defendants show that on September 28, 2009, Dews filed a request for administrative remedy ("ARP") alleging that Officer Cook had removed a religious book left outside his cell door as contraband. Def.'s Mot. Summ. J., Exhibit A., pp. 5-6. The ARP was dismissed as frivolous on October 8, 2009 because the book was outside the cell and unattended property is considered contraband. *Id*., p. 5.[2]

In regard to Dews' complaints about his food, Defendants note that the Division of Correction offers a choice of two meal plans: a regular menu and a vegetarian diet. In April of 2009, Dews chose the vegetarian diet and has received his meals accordingly. *Id*., p. 4, ¶ 4.

### B. Excessive Force Claims

#### 1. November 16, 2009

Defendants' records indicate that on November 16, 2009, Dews covered his cell window

---

[2] DCD 220-004 requires inmates to secure personal property and keep it with them, in their cell, or in a designated area. Unstored property can pose a fire, sanitation, security, or housekeeping hazard. ECF 14, Exhibit A, ¶ 3.

and feed-up slot with feces and refused to comply with direct orders issued by corrections officers. Id. pp 8-9. Dews was extracted from his cell without use of force and moved to Special Observation Housing (SOH) for a 15-minute suicide watch. Id. pp. 8-9, 17. He refused to be handcuffed. Id. p. 9. Medical personnel observed Dews in his cell but did not take his vital signs because he had not been handcuffed. They noted a steady gait and no obvious blood in the feces or urine on the floor outside his cell. Id.

In their declarations, Officers Cook, Drew, Cartwright, and Gover state that they do not recall extracting Dews from his cell and moving him to SOH. Exhibits B, C, D, E, and F. Officers Cook and Drew attest that they did not kick Dews in his private areas, and would only pepper spray an inmate if the inmate were harming himself or another. Def.'s Mot. Summ. J., Ex. B, ¶ 3 and Exhibit C, ¶ 3. Officers Cook and Drew state that they would never deny medical attention to an inmate who had been pepper sprayed. Id. In her affidavit, Officer Cartwright attests that she would only administer pepper spray when an inmate was harming himself or someone else. Id., Exhibit D, ¶ 3. Officer Gover attests that he did not choke Dews, nor would he ever choke an inmate. Id., Exhibit E, ¶ 3. Officer Crowe was not at work on November 16, 2009. Exhibit F. Defendants aver that Dews had access to toilets in SOH. Id., Exhibit A, ¶ 6. There is no Use of Force Report on record for Brandon Dews for the alleged November 16, 2009 incident. Id., Exhibit H. ¶ 4.[3]

### 2. November 17, 2009

On November 17, 2009, Dews stood on top of a sink and jumped into the window of the cell. Officer Ronald Barnes ordered Dews to stop but Dews attempted to stand on top of the sink again. Pepper spray was administered to prevent Dews from injuring himself. Dews was taken

---

[3] Any time that force is used to gain control over an inmate, a Use of Force Report is generated. Id., Exhibit H, ¶ 3.

to the medical unit, treated for exposure to pepper spray, and placed in a shower. Id., Exhibit A, pp. 12, 17. No other injuries were noted. Id. p 19.

The incident was investigated and a Use of Force Report prepared. After the incident was investigated, it was determined that corrections staff acted within the guidelines of the Use of Force Manual. See id. p. 11. Staff actions were appropriate to gain control of Dews and prevent him from harming himself. See id. pp. 10-23.[4] Dews refused to write a statement and told the investigator that he had no problems with the amount of force used. See id. p. 18

### 3. November 18, 2009

On November 18, 2009, Dews was returned to his cell after evaluation by mental health staff. Later that day, Dews was placed on staff alert and placed in a contingency cell[5] based on statements he made in his ARP written the same day. The statements were:

> I won't be held responsible if anythings [sic] happen to staff or me.
>
> **********
>
> I admit that I do have an anger problem I get mad 'bout the littlest things and will zap out like I did Monday 16, with the feces and all the other things I did because they keep makin [sic] me mad but like I said I've been here 9 months and never had a problem till now so I'm not criminally responsible for what happens to these ofc's if they set me of [sic] again Last time was nothing but I promise next time I will make them earn their hazard pay and I no their [sic] trying kill me but I'll kill myself before I let these racist kill me…
>
> **********
>
> And I'm refusing all treatment and food because I no their [sic] their trying kill but it doesn't matter coz all they feed me are breakfast sausage every meal.

---

[4] The officer who administered the pepper spray was Officer Barnes. Def.'s Mot Summ. J., Exhibit A, p. 12. Officer Barnes is not a defendant in this case.

[5] Inmates in contingency cells are provided a mattress unless it is determined to pose a security threat. Inmates are given hygiene items as needed and permitted three showers weekly. They receive the same meals as inmates in the general population. Inmates may refuse meals by placing a note on their cell door. Inmates must be visible with no obstruction to cell light or window to receive a meal tray. Def.'s Mot Summ. J., Exhibit A, ¶ 8.

Id., Exhibit A, pp. 25-26.

Officers Crowe and Sergeant Likin state in their declarations that they do not recall escorting Dews on November 18, 2009. Id. Exhibit F ¶ 5; Exhibit G ¶ 3. Officer Crowe and Sergeant Likin attest that they would never kick an inmate and would not have kicked Dews. See id. Officer Crowe states that he would only administer pepper spray to an inmate for a just cause such as refusing a direct order, endangering an officer, or endangering himself. Id., Exhibit F ¶ 5. Sergeant Likin states that he would never pepper spray an inmate without just cause. Id., Exhibit G ¶ 3.

Officer Drew recalls escorting Dews to a contingency cell on November 18, 2009. Id., Exhibit C ¶ 4. Officer Drew states Dews was stripped of some of his clothing because inmates in contingency cells are generally left with only their t-shirts and underwear. Officer Drew attests that he did not kick Dews. Officer Dews does not recall anyone kicking or macing Dews during the escort. See id. There was no Use of Force Report generated for Dews' relocation to the contingency cell. Id., Exhibit H, ¶ 4.

### 4. November 19, 2009

On November 19, 2009, Officer Drew reported that Dews had covered his contingency cell window with a brown paper bag. Sergeant Likin went to the outside back window of the cell and observed Dews placing cellophane over his face in an attempt to harm himself. Id., Exhibit A, pp. 30, 31, 35, 36-37. Lieutenant Hall ordered Dews to remove the cellophane from his face and report to the feed-up slot for hand restraints. Lieutenant Hall told Dews that if he did not comply, he would be pepper sprayed and removed from the cell. See id., pp. 36-37. When Dews did not comply, pepper spray was administered. Fecal matter and urine were noted on the cell

floor windows, and walls. Officers, wearing barrier suits, removed Dews from the cell without further incident. Dews was offered and refused a shower. He was treated by medical staff for pepper spray exposure. No injuries or complaints of discomfort were noted. See id. p. 48. Officers then escorted him to the SOH at the direction of psychology department personnel. See id. pp. 28, 30-32, 35.

A Use of Force Report was prepared for the incident and concluded that the incident was an appropriate response to prevent Dews from harming himself. See id. p. 28. Dews refused to write a statement for the subsequent investigation. See id. p. 46.

A review of records indicates that Dews was not prescribed any medications for mental anguish from allegedly resultant injuries. Id., p. 56. Dews has not filed an ARP concerning excessive use of force. Id.

**STANDARD OF REVIEW**

Rule 56 (a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56 (a). A material fact is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. Id. at 249. "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but

8

rather must 'set forth specific facts showing that there is a genuine issue for trial.' " Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir.2003) (quoting Fed.R.Civ.P. 56(e)). In that context, a court is obligated to consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. See Matsushita Electric Industrial Company v. Zenith Radio Corporation, 475 U.S. 574, 587 (1986); see also E.E. O.C. v. Navy Federal Credit Union, 424 F.3d 397, 405 (4th Cir. 2005). Rule 56 mandates summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

## DISCUSSION

### 1. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) requires that "prisoners ... exhaust such administrative remedies as are available prior to filing suit in federal court." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (internal quotation marks omitted) (quoting 42 U.S.C. § 1997e(a)). The PLRA applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Before bringing suit in federal court, "a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively." Id. (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006)). Exhaustion is mandatory and unexhausted claims may not be brought in court. See Jones v. Bock, 549 U.S. 199 (2007).

9

Dews is required under the PLRA to properly exhaust all administrative remedies prior to filing suit. Except for his complaint about his religious book, Dews has failed to exhaust his administrative remedies. Consequently, his remaining claims are subject to dismissal for failure to exhaust administrative remedies  Even if these claims were not subject to dismissal on this basis, the Complaint would be unavailing on other grounds.

### 2. Claims Against Warden Morgan

Dews presents no allegation of fact personally involving Warden Morgan in the events at issue in this case. To the extent Dew intends to premise liability based on respondeat superior, the doctrine does not apply in § 1983 proceedings. See Monell v. Department of Social Services, 436 U.S. 658, 691(1978); Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004). Absent an allegation of personal involvement or unconstitutional policy or custom, there is no legal basis to find the Warden Morgan liable. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.1994). Accordingly, Warden Morgan is entitled to summary judgment in his favor.

### 3. Verbal Abuse Claims

When a defendant makes comments that may constitute verbal abuse or harassment, those comments alone do not rise to the level of an Eighth Amendment violation. See Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979), cited favorably in, Moody v. Grove, 885 F.2d 865 (4th Cir.1989) (table) (unpublished) (stating as a general rule that verbal abuse of inmates by guards, without more, does not state a constitutional claim). The Constitution does not "protect against all intrusions on one's peace of mind." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). Verbal harassment or idle threats to an inmate, even to an extent that it causes an inmate fear or emotional anxiety, do not constitute an invasion of any identified liberty interest. See Emmons v.

McLaughlin, 874 F.2d 351, 354 (6th Cir.1989) (stating verbal threats causing fear for plaintiff's life not an infringement of a constitutional right); Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir.1985) (calling an inmate an obscene name did not violate constitutional rights); Lamar v. Steele, 698 F.2d 1286 (5th Cir.1983) ("Threats alone are not enough. A[§ ] 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation."). Defendants' alleged use of racial slurs and abusive language is vile and reprehensible. It is highly unprofessional. It does not, however, form the basis for a § 1983 claim. Accordingly, Defendants are entitled to summary judgment as to this claim.

### 4. Food Claim

To show an Eighth Amendment violation, an inmate must show deprivation of the minimal necessities of life such as adequate food. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). Dews is receiving a vegetarian diet at his request. While Dews might not like the vegetarian sausages or find the menu boring, his claim fails to amount to one of constitutional magnitude. Notably, Dews does not claim the vegetarian meals are nutritionally inadequate. Dews provides no factual basis for his otherwise bald statement that he is afraid to eat the food.

### 5. Conditions of Confinement Claims

The Eighth Amendment protects prisoners from cruel and unusual living conditions. See Rhodes v. Chapman, 452 U.S. 337 (1981). In order to state a constitutional claim premised on prison conditions, a plaintiff must allege facts demonstrating that the challenged conditions resulted in a deprivation of a basic human need that was objectively "sufficiently serious" and (2) that, subjectively, the defendant prison officials acted with a sufficiently "culpable state of mind" with regard to the conditions. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). To satisfy

11

the objective element of a conditions claim, the plaintiff must show that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions. See Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir.1993). Isolation, inactivity, discomfort and inconvenience do not in and of themselves violate the Constitution. See In Re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 471-72 (4th Cir. 1999).

In this case, Dews alleges harm not from his placement in the bare SOH or contingency cell, but from the alleged excessive force incidents. There is no medical record of harm or that psychotropic medications have been prescribed for him. To the extent Dews claims that he suffered emotional or mental injury, under the PLRA, 42 U.S.C. § 1997e(e), an inmate cannot sue for damages of emotional or mental injury in the absence of physical injury.

It bears noting that Defendants state Dews had access to a toilet in SOH. While on staff alert, Dews had access to hygiene items, showers, and meals available to general population inmates. His placement in the SOH and contingency cells was for limited duration. While Dews might have been temporarily without the usual amenities of his regular cell, Defendants have shown that his relocations at issue were based on the need to prevent self-harm or harm to others. When Dews' allegations are considered in the light most favorable to him, he fails to show that any genuine issues of material fact remain for trial. Consequently, Defendants are entitled to summary judgment as to the conditions claims.

**6. Excessive Force**

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. See Whitley v.

Albers, 475 U.S. 312, 319 (1986). The standard for Eighth Amendment excessive force claims consists of subjective and objective components. See Hudson v. McMillian, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." Hudson, 503 U.S. at 8. With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."

"[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Id. at 4. Fourth Circuit precedent interpreting Hudson previously held that in order to prevail on an excessive force claim, a plaintiff must provide more than de minimis injury. See Norman v. Taylor, 25 F3d 1259, 1263 (4th Cir. 1994) (overruled); Riley v. Dorton, 115 F3d 1159, 1166-68 (4th Cir. 1997) (overruled). However, the Supreme Court recently held that "[i]n requiring what amounts to a showing of significant injury in order to state an excessive force claim, the Fourth Circuit has strayed from the clear holding of this Court in Hudson." Wilkins v. Gaddy, _U.S. _, 130 S. Ct. 1175 (2010). The Supreme Court explained that its holding in Hudson does not stand for the proposition that a "certain quantum of injury [needed to be] sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins, 130 U.S. at 1178 (quoting Hudson, 503 U.S. at 7). The Court did not want an inmate who was the victim of excessive force to lose the ability to pursue an excessive force claim because he had "the good fortune to escape without serious injury." Wilkins, 130 U.S. 1179.

Absence of serious injury, however, is not irrelevant. The extent of injury could indicate whether the use of force was thought to be necessary and it could provide an indication of the amount of force actually applied. See id at 1178. A "push or shove," without a resulting discernible injury, almost always fails to state a claim for excessive force because, ' "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."' Id. (quoting Hudson, 503 U.S. at 9).

Defendants deny that they used excessive force against Dews on November 16, 2009. The medical department did not observe any injury to Dews. Contrary to Dews assertions, Officer Crowe was not present when Dews was taken from his cell. Those who were present, Officers Cook, Drew, Cartwright, and Gover, do not recall any problems with the cell extraction. Officer Drew attests he did not kick Dews. Officer Gover denies choking Dews.

In regard to Dews claims concerning his November 18, 2009 relocation to a contingency cell, neither Officer Crowe nor Sergeant Likin recall escorting him. They deny they would have kicked an inmate. Officer Drew remembers escorting Dews but denies kicking or using pepper spray. If physical force or pepper spray is used, a Use of Force Report is required. Exhibit H, ¶ 4. There is no Use of Force Report on file. Id.

The Use of Force Report for the November 19, 2009, incident concluded that the Defendants used a short burst of pepper spray to prevent Dews from harming himself. Dews was taken to the medical unit for evaluation afterwards where no complaints of pain or discomfort were noted.

## CONCLUSION

Considering the facts and all reasonable inferences in the light most favorable to Dews, the Court concludes that no genuine issue as to any material fact is presented and Defendants are entitled to a judgment as a matter of law. Summary Judgment shall be entered in favor of Defendants by separate Order.

Date: <u>February 16, 2011</u>　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　ROGER W. TITUS
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE